THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY TOMPKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 1:21-cv-00055-WS-N |
| | ) |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT RUSHMORE LOAN MANAGEMENT SERVICES, LLC'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Rushmore Loan Management Services, LLC ("Defendant"), by and through its undersigned counsel, respectfully moves this Court pursuant to FED. R. CIV. P. 56 to grant summary judgment in its favor as a matter of law on Plaintiff Tommy Tompkins ("Mr. Tompkins") Fair Debt Collection Practices Act ("FDCPA") claim and Intentional Infliction of Emotional Distress ("IIED") claim, there being no genuine issue of material fact.

Rushmore services Mr. Tomkins' mortgage loan. In this action, Mr. Tompkins asserts a FDCPA claim, contending that Rushmore violated the FDCPA by placing calls to Mr. Tompkins' home, landline telephone. (Am. Compl., ¶ 22). The FDCPA, however, is not applicable here because Rushmore is not a "Debt Collector" as defined by the FDCPA with regard to Mr. Tompkins. Mr. Tompkins has also amended his Complaint to assert an IIED claim premised on the same conduct (Am. Compl., ¶¶ 24-28), but Alabama law does not recognize a claim for intentional infliction of emotional distress under these circumstances. Accordingly, Defendant is due summary judgment on all of Mr. Tompkins' claims.

## I. UNDISPUTED MATERIAL FACTS

On February 25, 2015, Mr. Tompkins executed and delivered a Note to the original lender, Embrace Home Loans, Inc. ("Embrace"), in the original principal amount of $208,650.00. (Am. Compl., ¶ 6). The Note was secured by a real estate mortgage ("Mortgage") executed by Mr. Tompkins, encumbering the real property located at 5804 Chattanooga Drive, Satsuma, Alabama 36572 (the "Property") (the Note and Mortgage collectively, the "Loan"). (Exhibit A-1, Mortgage; Compl., ¶ 6).

2. The Loan was previously serviced by Embrace and Roundpoint Mortgage Servicing Co. on behalf of Embrace Home Loans, Inc. (Compl., ¶ 7; Exhibit A, Affidavit of Anthony Younger ("Younger Aff."), at ¶ 7).

3. Servicing of the Loan transferred to Rushmore effective March 3, 2020. (Ex. A, Younger Aff., at ¶ 8; Exhibit A-2, Notice of Assignment, Sale or Transfer of Servicing).

4. Mr. Thompson was current on his Loan payments when servicing transferred to Rushmore and was not in default on the Loan terms. (Younger Aff., ¶ 9; Exhibit A-3, Loan Payment History).

5. After the Loan transferred to Rushmore, Mr. Tompkins was late making several monthly payments on the Loan. (Younger Aff., ¶ 10). Rushmore accordingly placed several telephone calls to Mr. Tompkins' home, landline phone in the months of April and Mary 2020 to inquire as to the payments. (*Id.*). Rushmore last placed a call to Mr. Tompkins on May 22, 2020. (*Id.*).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986). After the movant has carried its burden to identify issues where there is no genuine issue of material fact, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Southern Solvents, Inc. v. New Hampshire Ins. Co.*, 91 F.3d 102, 104 (11th Cir. 1996).  If the non-moving party bears the burden of proof at trial, the moving party need only point to the absence of any fact issue in the record, and the evidentiary burden then shifts to the non-moving party to show with "significant probative" evidence that there exists a triable issue of fact. *Celotex Corp.*, 477 U.S. at 322.

Although reasonable inferences must be drawn in favor of the non-moving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  Summary judgment must be granted if the movant satisfies his burden and the non-movant fails to show that a genuine issue exists as to a material fact. FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.

## IV. ARGUMENTS & AUTHORITIES

### A.  The FDCPA does not apply.

Mr. Tomkins asserts a FDCPA claim in this action, alleging that Rushmore's loan servicing calls to Mr. Tompkins violated 15 USC § 1692d(5).[1]  For the FDCPA to be applicable, however, Rushmore must be a "debt collector" as defined 15 U.S.C. § 1692a(6).  Because the

---

[1] Mr. Tompkins is no stranger to litigation concerning telephone calls.  Mr. Tompkins has filed at least nine cases in the Southern District of Alabama all alleging claims under federal statutes such as the FDCPA and Telephone Consumer Protection Act related to telephone calls that he received. *See, e.g.*, *Tomkins v. Midam Ventures, LLC*, Case No. 19-cv-1112 (S.D. Ala. Dec. 19, 2019); *Tompkins v. Sincerely, LLC*, Case No. 1:21-cv-149 (S.D. Ala. March 29, 2021); *Tompkins v. Halo Vehicle Protection, LLC*, Case No. 1:20-cv-33 (S.D. Ala. Jan. 22, 2020).  In fact, Mr. Tompkins *wrote the book* on suing companies that call him: Tommy Tompkins, *Stop Telemarketing Calls & Get Paid*, e-book available at https://www.amazon.com/Stop-Telemarketing-Calls-Get-Paid-ebook/dp/B0827CGGYH.  Mr. Tompkins claims that his book provides "a tested and trusted method . . . to get these telemarketers to PAY YOU $500 to $1,500 per call!" *Id.*

Loan was current when it was transferred to Rushmore for servicing, Rushmore is not a "debt collector" and the FDCPA does not apply. Rushmore is accordingly due judgment in its favor on Mr. Thompson's FDCPA claim as a matter of law.

In order "[t]o state a claim under the FDCPA, a plaintiff must establish, among other things, that the defendant is a 'debt collector.'" *Prickett v. BAC Home Loans, et al.*, 946 F. Supp. 2d 1236, 1248 (N.D. Ala. 2013). The FDCPA defines a "debt collector" in 15 U.S.C. § 1692a as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The FDCPA's definition of a "debt collector," however, expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F). **Accordingly, a mortgage servicer who obtains a debt when it is not in default is not a "debt collector" and is not subject to the FDCPA.** *Id.*; *Davidson v. Capital One Bank, N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015) ("Thus, a person who otherwise meets the definition of 'debt collector' may be excluded from the term if he obtained a debt from another, he is collecting the debt for another, and the debt was acquired prior to default."); *Solis v. CitiMortgage, Inc.*, 699 Fed. Appx. 891, 894 (11th Cir. 2017) ("In other words, an entity that seeks to collect a debt that was not in default when the entity acquired it does not qualify as a debt collector for purposes of the FDCPA."); *Frone v. JP Morgan Chase & Co.*, 695 Fed. Appx. 468, 472 (11th Cir. 2017) (affirming dismissal of a FDCPA claim where the plaintiff alleged that a mortgage loan servicer "began servicing [the plaintiff's] loan five years before the alleged default occurred"); *Fenello v. Bank of America, NA*,

4

577 Fed. Appx. 899, 902 (11th Cir. Aug. 12, 2014) ("the district court correctly concluded that Bank of America was not a 'debt collector' for purposes of § 1692g(b) because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer").

Here, Mr. Tompkins' Loan was not in default when servicing was transferred to Rushmore. Rushmore obtained the servicing of Mr. Tompkins' Loan on March 3, 2020. (Ex. A, Younger Dec., ¶ 8; Ex. A-2, Notice of Assignment, Sale or Transfer of Servicing). Mr. Tomkins' Loan was current on March 3, 2020 when Rushmore obtained servicing. (Ex. A, Younger Dec., at ¶ 9). As of March 3, 2020, Mr. Tompkins had made the last payment that came due before the transfer, the February 2020 payment, and was current on the Loan. (*Id.*; Ex. A-3, Payment History). Moreover, Rushmore did not consider the Loan to be in default for any reason when it obtained servicing on March 3, 2020. (Ex. A, Younger Dec., at ¶ 9).

Because Mr. Tompkins' Loan was not in default when Rushmore obtained servicing, Rushmore is expressly excluded from the FDCPA's definition of "debt collector." The FDCPA therefore does not apply. Mr. Tompkins' FDCPA claim fails as a matter of law, and Rushmore is due summary judgment on the claim.

### B. Alabama law does not recognize a claim for intentional inflict of emotional distress in the circumstances presented by the Amended Complaint.

Next, Defendant is due summary judgment on Mr. Tompkins' IIED claim because Alabama law does not recognize a claim for IIED under the facts presented in the Amended Complaint.

The elements of intentional infliction of emotional distress, also known as the tort of outrage, are as follows:

> (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) ... the distress was severe. With respect to the conduct element, this court has stated that the conduct must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'

*Thomas v. Williams*, 21 So. 3d 1234, 1237-38 (Ala. Civ. App. 2008), *quoting Gunter v. Huddle*, 724 So. 2d 544, 547 (Ala. Civ. App. 1988); *see also American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980).

The Alabama Supreme Court has "consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, [the Alabama Supreme Court] has held in a large majority of the outrage cases reviewed that no jury question was presented." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993) (citing multiple cases). **In fact, "[t]he tort of outrage ... is so limited that [the Alabama Supreme Court] has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment."** *Potts v. Hayes*, **771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted).**

Thus, courts applying Alabama law have repeatedly rejected claims of intentional infliction of emotional distress predicated on collection of a mortgage loan. *See, e.g. Star Properties, LLC v. Kirby*, 2017 WL 9511144, at *15-16 (N.D. Ala. May 16, 2017) ("[A] claim of intentional infliction of emotional distress based on the foreclosure must fail."); *Shuler v. Garrison*, 2017 WL 191267, at *23 (N.D. Ala. Jan. 13, 2017) (dismissing intentional infliction of emotional distress claim based on collection of a mortgage loan as insufficient); *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1369 (S.D. Ala. 2013) (allegations of wrongful

foreclosure "simply do not rise to the necessary level of egregious conduct nor do they arise within the three contexts in which the Alabama Supreme Court has recognized outrage claims"); *Jackson v. Countrywide Home Loans, Inc.*, 2012 WL 777180, at *8 (M.D. Ala. Mar. 7, 2012) ("Plaintiff's tort of outrage claim, which is related to Defendants' alleged debt collection efforts and which does not fall into one of the presently recognized contexts in which a tort of outrage claim is appropriate, is due to be dismissed.").

In *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1369 (S.D. Ala. 2013), a mortgage loan borrower asserted an IIED claim against the servicer of that loan "stem[ing] from the servicing of her mortgage loan." *Id.* This Court noted that the borrower's allegations concerning the servicing of her mortgage loan "simply do not rise to the necessary level of egregious conduct nor do they arise within the three contexts in which the Alabama Supreme Court has recognized outrage claims." *Id.* Accordingly, the Court dismissed the IIED claim for failure to state a claim. *Id.*

Here, Mr. Tompkins' IIED is similarly deficient. Mr. Tompkins' claim is premised entirely on Defendant's loan servicing acts: the collections calls allegedly made to Mr. Tompkins. (Am. Compl., ¶¶ 26-27). These allegations are simply insufficient as a matter of law to state a claim for IIED. They do not fit into the three limited categories of conduct recognized by the Alabama Supreme Court in *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). And, the allegations fall well short of demonstrating conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Gunter*, 724 So. 2d at 547. Defendant is accordingly due summary judgment on Mr. Tompkins' IIED claim.

7

## V. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Rushmore respectfully request that the Court enter an order granting judgment in Rushmore's favor and dismissing Mr. Tompkins' Amended Complaint and for such other and further relief that the Court deems proper and just.

DATED: June 16, 2021

/s/ Grant A. Premo
Grant A. Premo
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
gpremo@bradley.com

*ATTORNEY FOR RUSHMORE LOAN MANAGEMENT SERVICES, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

All counsel of record.

/s/ Grant A. Premo
OF COUNSEL